1  Mark J. Skapik (SBN 164957)
   Geralyn L. Skapik (SBN 145055)
2  Blair J. Berkley (SBN 222293)
   SKAPIK LAW GROUP
3  5861 Pine Avenue, Suite A-1
   Chino Hills, CA 91709
4  Attorneys for Plaintiffs
   (909) 398-4404
5  (909) 398-1883 (fax)

6
   Eric Christopher Morris (SBN 243425)
7  SOUTHERN CALIFORNIA LAWYERS GROUP
   5861 Pine Ave. Suite A-1
8  Chino Hills, Ca 91709
   (909) 398-4404
9  Attorneys for Plaintiffs,
   *on behalf of themselves and*
10 *all others similarly situated,*

11

12                  UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14              EASTERN DIVISION – RIVERSIDE

15

| | |
|---|---|
| 16  MARLON JOHNSON; CHRISTOPHER CROWELL; JANE DOE on behalf of | Case No.: |
| 17  themselves and all others similarly situated, | **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY** |
| 18                    Plaintiffs, | **RELIEF** |
| 19        vs. | **DEMAND FOR JURY TRIAL** |
| 20  COUNTY OF SAN BERNARDINO; SAN | |
| 21  BERNARDINO SHERIFF'S DEPARTMENT; SHERIFF JOHN | |
| 22  MCMAHON, individually and in his official capacity of Sheriff of San | |
| 23  Bernardino County; PAUL WYNN, individually and in his official capacity; | |
| 24  JOE BILLINGS, individually and in his official capacity; RICK BESSINGER, | |
| 25  individually and in his official capacity; ROBERT GUILLEN, individually and in | |
| 26  his official capacity;  Does 1 through 10, | |
| 27                  Defendants. | |

28

# I.    INTRODUCTION, JURISDICTION AND VENUE

1.    This is an action pursuant to 42 U.S.C. § 1983 and state law challenging several unjustified and sexually-intrusive strip-search procedures used on both men and women during the booking/intake/detention process at the San Bernardino County Jails ("SBCJ").

2.    First, the SBCJ maintains a blanket policy requiring that all men and women Detainees (hereinafter "Detainees" and/or "Inmates") placed in its custody for non-violent, non-weapon and/or non-drug related, undergo a strip search regardless of the reason for being detained.

3.    There is no legitimate purpose for subjecting Detainees and Inmates to this procedure. Rather, as explained below, it serves only to humiliate and dehumanize these individuals.

4.    In addition to lacking any legitimate purpose, the procedures are also performed in a coercive, unsanitary, and dehumanizing environment. The examiners often fail to change gloves between procedures or otherwise follow usual precautions against the spread of infection. Moreover, the Detainees are provided no explanation of what is being done to them. Indeed, asking questions can be considered recalcitrance which can result in the use of physical force on the Detainees.

5.    Plaintiff JOHNSON, CROWELL and Plaintiff DOE were processed into the SBCJ as part of a group of Detainees, all of whom were required to undergo a strip search. Plaintiff JOHNSON was being processed on a resisting arrest charge, a charge which is non-violent, non-weapon, and non-drug related. Plaintiff JOHNSON'S charge was based upon First Amendment Protected activity, which charge was later dismissed at trial. Plaintiff CROWELL and DOE were processed on a non-violent, non-weapon, non-drug related charge.

6.    The SBCJ requires both Inmates and Detainees to undergo invasive strip searches during intake/booking/detention. After it became clear what was being done to the group, one of the Detainees demanded to know why this process was being

performed on her. The Detainee's question was met with silence and she was forced to participate without an explanation.

7.     The SBCJ procedure for Inmates and Detainees, requires that they strip naked and line up facing a wall, shoulder-to-shoulder, in a group of other Inmates and Detainees, who are also being processed into the jail.

8.     The Inmates and Detainees are then instructed as a group to bend over and spread their buttocks with their hands and cough multiple times. Inmates and Detainees must remain in this position as guards walk down the row, visually inspecting their anal cavity and "private parts."

9.     Women are required to undergo a similar set of searches whereby the women must strip naked, bend over and assume a crouched position. They are then instructed to cough several times as a guard or guards watch. Often Inmates and Detainees are forced to stand naked amongst each other in close proximity for twenty-minutes or more.

10.     These invasive strip and visual body cavity searches are conducted pursuant to a blanket procedure that does not require any particularized suspicion that the Detainee or Inmate is concealing anything in his/her cavities. Moreover, the SBCJ requires that these searches be conducted on all Inmates and Detainees at the time they are first brought to the SBCJ without regard to the nature of the crime for which they are being held.  In other words, a person arrested for a non-violent, non-weapon, non-drug charge, including a traffic-related misdemeanor who has not yet been able to raise bail, will be subjected to the same invasive search as someone arrested for much more serious offences.

11.     These invasive strip and visual body cavity searches are also conducted pursuant to a blanket procedure on Inmates and Detainees returning to General Population from the Court; Work Assignments; Infirmary; Intake; Visiting; Vestibules for official visiting purposes; Law Library; Enroute to chow; Inmates enroute to locations that are under the direct observation and control of staff.

COMPLAINT

12. The SBCJ had no justification to force PLAINTIFFS and the members of the class to submit to these needlessly invasive searches and/or for forcing them to undergo the procedures in such humiliating ways. Nevertheless, San Bernardino County's policymakers, including Defendant MCMAHAN, instituted these unconstitutional procedures and they have turned a blind eye to the dehumanizing way in which these searches are conducted.

13. Indeed, individuals have sued previously over these practices, but the relatively-small liability threatened by these individual suits has not been sufficient to cause the policymakers to implement reforms. Plaintiffs bring this class action to compensate those who have been victimized by these sexually-invasive procedures and, hopefully, to bring change.

14. Plaintiffs present federal claims for relief that arise under 42 U.S.C. §1983. Accordingly, federal jurisdiction is conferred upon this court by 28 U.S.C. §§1331 and 1343. Plaintiffs' state law claims are so related to Plaintiffs' federal law claims that they form part of the same case or controversy. Accordingly, supplemental jurisdiction over those claims is conferred upon this court by 28 U.S.C. § 1367.

15. Plaintiffs' claims arise out of acts of the San Bernardino Sheriff's Department ("SBSD") in the County of San Bernardino, State of California. Accordingly, venue is proper within the Central District of California.

16. By this Complaint, Plaintiffs, on behalf of themselves and the Class of similarly situated persons described below, seek damages from Defendants for being subjected to unwarranted, unnecessary, illegal, and severely intrusive strip and/or visual body cavity searches. Plaintiffs allege that such strip and/or visual body cavity searches were caused by, and are pursuant to, an unlawful SBSD policy which was formulated, promulgated, instituted, implemented and used by Defendants and Does 1 through 5.

## II. PARTIES

### A. Class Representative Plaintiffs

17. Plaintiff MARLON JOHNSON ("JOHNSON"), a male, is a resident of the County of San Bernardino.

18. Plaintiff CHRISTOPHER CROWELL ("CROWELL") a male, is a resident of the County of San Bernardino.

19. Plaintiff JANE DOE ("JANE"), a female, is a resident of the County of San Bernardino. She is still on parole and fears retaliation, physical and mental harm should her name be revealed at this time. JANE also fears harm to her family if her name is revealed as being a parolee, her home is subject to routine searches and all family members in her home have been harassed and searched without cause or warrant. Given her status as a parolee, Plaintiff JANE is particularly vulnerable to this harm especially given the fact that this litigation involves the Defendants that controls her parole status. As such, she is proceeding at this time under this fictitious moniker. JANE will also file a Motion for Leave to Proceed Anonymously. JANE will reveal her name at the expiration of her parole period, which is expected to on or before December 31, 2018.

20. Each of the aforementioned Plaintiffs was housed in a San Bernardino County jail facility preceding the filing of this complaint.

### B. Class Defendants

21. All Defendants are either California peace officers, or California governmental entities, or others whose identities are unknown to Plaintiffs. Individual police officer defendants and/or individual Sheriff's deputies are hereinafter referred to as "police officers" and any governmental entity defendants are referred to by proper name or as "governmental entity." The phrase "Defendants" refers to all defendants, including the Class defendants.

22. Defendant County of San Bernardino ("COUNTY") is a political subdivision duly organized and existing under the laws of the State of California. The

San Bernardino Sheriffs Department ("SBSD") is an agency of defendant COUNTY, and all actions of the SBSD are the legal responsibility of the COUNTY. These defendants are sued in their own right for a County and/or SBSD policy, practice or custom that caused Plaintiffs' injuries in violation of one or more federal constitutional guarantees under 42 U.S.C. § 1983, and on Plaintiff's' state law claims from injunctive relief based on violations of mandatory duties under California Government Code §815.6, the state constitutional provisions identified above and Civil Code §52.1. Defendant COUNTY oversees the operation of the SAN BERNARDINO SHERIFFS DEPARTMENT, who in turn oversees the operation of the county jails within the County of San Bernardino. The SBSD Jails have 7,400 jail beds and book on average 85,000 people annually. Defendant COUNTY is sued both in its own right, and pursuant to California Government Code § 815.2.

23.    All individual Defendants are named based on their personal involvement and/or supervisorial liability for their role in the constitutional deprivations alleged herein, including but not limited to their establishment, setting in motion, failing to terminate, ratification, implementation, institution, and/or execution of the unlawful actions, policies, practices and customs against the class members in the San Bernardino County jails, and/or failure to adequately train or supervise the SBSD personnel who engaged in the conduct alleged herein.

24.    All Defendants undertook the affirmative act of strip searching Detainees and Inmates that are being held on non-violent, non-weapons or non-drug charges, pre and post arraignment and absent reasonable suspicion or probable cause that the individual is in possession of weapons or drugs, before being placed in a San Bernardino County Jail facility.

25.    Defendant SBSD is an agency of the COUNTY and is a public entity under California law subject to suit per Federal Rule of Civil Procedure 17(b). Defendant SBSD is sued both in its own right, and pursuant to California Government Code § 815.2, and mandatory duties under California Government Code § 815.6.

26.     All Defendants were aware and had knowledge that the strip and/or visual cavity searches on Detainees and Inmates that are being held on non-violent, non-weapons or non-drug charges, pre and post arraignment, and prior to conviction, and absent reasonable suspicion or probable cause that the individual is in possession of weapons or drugs, were unconstitutional.  Defendants, and each of them, were aware and had knowledge that these actions violated a constitutional right that were clearly established at the time of the strip search and/or visual cavity search was conducted. Defendants' actions caused a deprivation of Plaintiffs' constitutional rights.

27.     The Defendants did not have a good faith belief that their actions were lawful or that any such belief was objectively reasonable, given the state of the law at the time, including the Final Order issued in Craft v. County of San Bernardino, Case No.: EDCV05-00359 SGL.  Defendants had a fair and clear warning that said actions complained of herein were unconstitutional.

28.     Defendant JOHN MCMAHON ("MCMAHON") was and is the SBSD Sheriff.  Plaintiffs are informed and believe, and thereupon allege, that at all times relevant herein MCMAHON was responsible for the development, establishment and/or implementation of the procedures, policies, regulations, practices and/or customs of the SBSD with respect to its detention of prisoners.  By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the SBCJ comply with federal and state requirements for the treatment of Detainees. Throughout the class period, he has had personal knowledge that the practices challenged in this case were occurring on a routine basis. He is sued in his official and individual capacities for the forced strip search procedures as well as for the strip and cavity search procedures. Upon information and belief, Plaintiffs further allege that, at all times relevant herein, MCMAHON participated in, approved, and/or ratified the unconstitutional or illegal acts complained of herein.  Plaintiffs sue MCMAHON in his individual capacity.  MCMAHON is also responsible for ensuring that the policies and practices comply with federal and state

1  requirements for the treatment of Detainees and that they are properly implemented and

2  followed by SBSD Jail Captains PAUL WYNN, RICK BESSINGER and JOE

3  BILLINGS.

4       29.    Defendant Captain PAUL WYNN ("WYNN") was and is the SBSD Captain

5  operating the West Valley Detention Center Jail located in San Bernardino County.

6  Plaintiffs are informed and believe, and thereupon allege, that at all times relevant herein

7  WYNN was responsible for the development, establishment and/or implementation of the

8  procedures, policies, regulations, practices and/or customs of the SBSD with respect to its

9  detention of Detainees at the West Valley Detention Center (WVDC) in 1991 and is one

10 of the largest county jails in the State of California.  With a bed capacity of 3,347,

11 WVDC completes 50,000 to 60,000 bookings and releases each year.  By law, custom,

12 and/or delegation, he has policymaking authority over the jail for the actions at issue in

13 this case. He is responsible for ensuring that the policies and practices of the WVDC

14 comply with federal and state requirements for the treatment of Detainees. Throughout

15 the class period, he has had personal knowledge that the practices challenged in this case

16 were occurring on a routine basis. He is sued in his official and individual capacities for

17 the forced strip search procedures as well as for the strip and cavity search procedures.

18 Upon information and belief, Plaintiffs further allege that, at all times relevant herein,

19 WYNN participated in, approved, and/or ratified the unconstitutional or illegal acts

20 complained of herein.

21      30.    Defendant Captain JOE BILLINGS ("BILLINGS") was and is the Captain

22 operating the Glen Helen Rehabilitation Center Jail in San Bernardino County.  Plaintiffs

23 are informed and believe, and thereupon allege, that at all times relevant herein WYNN

24 was responsible for the development, establishment and/or implementation of the

25 procedures, policies, regulations, practices and/or customs of the SBSD with respect to its

26 detention of Detainees at the Glen Helen Rehabilitation Center Jail ("GHRC") in San

27 Bernardino County.   GHRC has a maximum capacity of 1446 Inmates and averages a

28 daily population of 800 male and female Inmates per day. By law, custom, and/or

1    delegation, BILLINGS have policymaking authority over the jail for the actions at issue

2    in this case. He is responsible for ensuring that the policies and practices of the GHRC

3    comply with federal and state requirements for the treatment of Detainees. Throughout

4    the class period, he has had personal knowledge that the practices challenged in this case

5    were occurring on a routine basis. He is sued in his official and individual capacities for

6    the forced strip search procedures as well as for the strip and visual cavity search

7    procedures. Upon information and belief, Plaintiffs further allege that, at all times

8    relevant herein, BILLINGS participated in, approved, and/or ratified the unconstitutional

9    or illegal acts complained of herein.

10    31.    Defendant Captain RICK BESSINGER ("BESSINGER") was and is the

11    Captain operating the High Desert Detention Center Jail in San Bernardino County.

12    Plaintiffs are informed and believe, and thereupon allege, that at all times relevant herein

13    BESSINGER was responsible for the development, establishment and/or implementation

14    of the procedures, policies, regulations, practices and/or customs of the SBSD with

15    respect to its detention of Detainees at the High Desert Detention Center Jail ("HDDC")

16    in San Bernardino County.  In January 2006, the High Desert Detention Center Jail was

17    opened and has the capacity to house over 700 Inmates daily.  By law, custom, and/or

18    delegation, BESSINGER has policymaking authority over the jail for the actions at issue

19    in this case. He is responsible for ensuring that the policies and practices of the HDDC

20    comply with federal and state requirements for the treatment of Detainees. Throughout

21    the class period, he has had personal knowledge that the practices challenged in this case

22    were occurring on a routine basis. He is sued in his official and individual capacities for

23    the forced strip search procedures as well as for the strip and visual cavity search

24    procedures. Upon information and belief, plaintiffs further allege that, at all times

25    relevant herein, BESSINGER participated in, approved, and/or ratified the

26    unconstitutional or illegal acts complained of herein.

27    32.    Defendant Captain ROBERT GUILLEN ("GUILLEN") was and is the

28    Deputy Chief in charge of the Corrections Bureau which oversees all San Bernardino

County jail facilities, including the WVDC, Central, Glen Helen and HDDC. Plaintiffs are informed and believe, and thereupon allege, that at all times relevant herein GUILLEN was responsible for the development, establishment and/or implementation of the procedures, policies, regulations, practices and/or customs of the SBSD jails.   By law, custom, and/or delegation, GUILLEN has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the San Bernardino County Jails comply with federal and state requirements for the treatment of Detainees. Throughout the class period, he has had personal knowledge that the practices challenged in this case were occurring on a routine basis. He is sued in his official and individual capacities for the forced strip search procedures as well as for the strip and cavity search procedures. Upon information and belief, plaintiffs further allege that, at all times relevant herein, GUILLEN participated in, approved, and/or ratified the unconstitutional or illegal acts complained of herein.

33.    All Defendants' discriminatory conduct was intentional, and/or was done with reckless disregard for, and/or deliberate indifference towards Plaintiffs' rights.

34.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will give notice of these defendants' true names and capacities when ascertained. Plaintiffs are informed and believe, and based thereon allege, that DOE defendants are responsible in some manner for the damages and injuries hereinafter complained of. Plaintiffs sue DOE defendants in both their individual and official capacities.

35.    Plaintiffs are informed and believe, and based thereon allege, that Defendants Does 1 through 5 are responsible in some manner for the damages and injuries hereinafter complained of.

36.    Does 6 through 10 (hereinafter collectively referred to as "SBSD Supervisory Defendants") were and/or are now responsible for the SBSD jails. Among other duties they are responsible for the training, supervision, control, assignment and

discipline of both sworn and civilian personnel of the SBSD and County who work in, operate, administer and manage the jails, and for the formulation, promulgation, adoption, application, administration and enforcement of the policies, rules, regulations and practices of the SBSD jails.

37.     Upon information and belief, Plaintiffs further allege that, at all times relevant herein, Defendants participated in, approved, and/or ratified the unconstitutional or illegal acts that occurred within the SBSD jails which are complained of herein.

38.     Plaintiffs are informed and believe, and thereupon allege, that at all times relevant herein the individual defendants, and each of them, were the agents, servants and employees of defendants SBSD and County, and were acting at all times within the scope of their agency and employment, and with the knowledge and consent of their principals and employers, the SBSD and County.  At all times herein, these defendants, and each of them, were acting under the color of state law.

39.     Defendants will continue their aforementioned policies and practices unless enjoined and restrained by the Court. Without injunctive relief, applicable to the class as a whole, the class members will suffer irreparable harm for which there is no adequate remedy at law in that their constitutional and statutory rights will be systematically violated. Without the intervention of this Court, Defendants will continue these unconstitutional practices.

40.     Defendants have the resources and money to properly process and house Detainees in a constitutional manner that does not violate their constitutional rights.

41.     The Defendants' unlawful treatment of Detainees outlined in this Complaint serves neither a legitimate compelling interest, nor a substantial state interest, nor is it narrowly tailored to serve any such interests.

42.     In engaging in the conduct alleged in this Complaint, Defendants, and each of them acted with deliberate indifference to, or a reckless disregard for the constitutional rights of Detainees.

43.    As a result of the unconstitutional conduct alleged herein, Plaintiffs have suffered damages, including emotional distress damages and pain and suffering, in amounts to be determined at trial.

44.    In engaging in the conduct alleged in this Complaint, Defendants, and each of them, acted maliciously, fraudulently and oppressively, and otherwise in a manner entitling Plaintiffs to an award of punitive damages.

## III.    CLASS ACTION CLAIMS

### A.    Allegations Common to All Class Claims

45.    On information and belief, Plaintiffs who were strip searched within the Statute of Limitations, as extended by the tolling provisions set forth in California Code of Civil Procedure § 352.1 and California Government Code § 945.3 and up to the time that date of class certification or such other date as the court may set, the strip and/or visual body cavity searches to which they and class members were subjected were done pursuant to defendants' policy and practice to indiscriminately search all, or a large number of persons being processed into the jail, without regard to: a) The nature of their offense or criminal history; b) Whether they are under an order of release or not; c) Whether they have had contact with any persons from outside the County jail system who could reasonably be believed to be a potential source of contraband or weapons; d) Whether there is cause of any kind to believe they are a potential source of contraband or weapons; e) Whether there is any other articulable justification for defendants' indiscriminate strip and/or visual body cavity search policy; or f) Whether they are "pre-arraignment Detainees," as that term is used in California Penal Code § 4030(b).

46.    On information and belief, Plaintiffs allege that Defendants have a policy of not limiting the persons who can see, or hear, or observe all or part of the strip and/or visual body cavity searches to those who are necessary to the procedure. Thus, other Inmates, dispensable jail personnel, and possibly others, are able to see or hear some or all of the searches described below.

47.     On information and belief, Plaintiffs allege that Defendants have a policy of engaging in group strip and visual body cavity searches, and that these searches are not conducted individually in a private area, with only those necessary to the strip search present.

48.     Plaintiffs and those who Plaintiffs seek to represent, suffered, among other things, the indignity of a strip and/or visual body cavity search of their persons. As a result of Defendants' actions, the Plaintiffs suffered physical intrusion, humiliation, pain and suffering, emotional distress, and other physical and emotional injuries in an amount to be proven at trial.

49.     These invasive strip and visual body cavity searches are conducted pursuant to a blanket procedure that does not require any particularized suspicion that the Detainee or Inmate is concealing anything in his/her cavities. Moreover, the SBCJ requires that these searches be conducted on all Inmates and Detainees at the time they are first brought to the SBCJ without regard to the nature of the crime for which they are being held.  In other words, a person arrested for a non-violent, non-weapon, non-drug charge, including a traffic-related misdemeanor who has not yet been able to raise bail, will be subjected to the same invasive search as someone arrested for much more serious offences.

50.     These invasive strip and visual body cavity searches are also conducted pursuant to a blanket procedure on Inmates and Detainees returning to General Population from the Court; Work Assignments; Infirmary; Intake; Visiting; Vestibules for official visiting purposes; Law Library; Enroute to chow; Inmates enroute to locations that are under the direct observation of staff.  Defendants acted with deliberate indifference to Plaintiff's rights when they took on the affirmative act of causing these strip searches and visual body cavity searches to be conducted.

**B.    Claim of Class Representative JOHNSON and CROWELL**

51.    In the early morning of January 22, 2018, CROWELL was driving his 9 year old daughter to her school. He noticed a San Bernardino Sheriff car lagging in the road. CROWELL was behind the Sheriff vehicle, and waited for the Sheriffs vehicle to proceed. When the Sherriff vehicle failed to move forward, CROWELL drove around vehicle. The Sheriff's vehicle was being driven by San Bernardino Sheriff's Officer Ramos. Angered by the fact that CROWELL drove around his vehicle, Sheriff Ramos pulled CROWELL over and arrested him on a traffic charge. There was no cause for this arrest. Because CROWELL's daughter was in the car, CROWELL called JOHNSON, his supervisor, who lived close to where the arrest location, to pick up his daughter, who was hysterical and sitting in the car.  JOHNSON arrived, and advised Sheriff Ramos that he was there to pick up CROWELL's daughter. Ramos screamed at JOHNSON, and told him to stay by his car. JOHNSON complied and started to video tape Ramos and CROWELL with his cell phone. Ramos approached JOHNSON, grabbed his cell phone, threw it on the ground, grabbed JOHNSON and slammed his face onto the pavement, injuring JOHNSON's head, face, neck, shoulder, arm and knee. JOHNSON was then arrested on a charge of violating Cal. Penal Code § 148 (resisting arrest). All charges against JOHNSON were eventually dropped.

52.    SBSD personnel transported JOHNSON and CROWELL to the San Bernardino Jail, Central Detention Center, where upon their arrival, SBSD personnel subjected them both to an intrusive strip/visual body cavity search. At the time of the searches, SBSD personnel did not have probable cause or reasonable suspicion that JOHNSON or CROWELL were in the possession of contraband, weapons or any other substance that would justify or necessitate the strip/visual body cavity search. While plaintiffs JOHNSON and CROWELL were subjected to this search, they were not provided privacy. Moreover, persons whose presence was not required were able to observe plaintiff as he was searched.

53.    Plaintiffs JOHNSON and CROWELL were forced to take off all their clothes, and facing the guards, were instructed to lift their genitals. They were forced to turn around and, with their backs to the guards, bend over, spread their buttocks, and cough. JOHNSON and CROWELL were forced to stand shoulder to shoulder. Deputies not involved in the search were present and observed the search. Inmates not being searched were also present as they moved between holding cells and the transportation area.

### C.    Claim of Class Representative JANE DOE

54.    In the summer of 2015, JANE was arrested for a non-violent, non-weapon, non-drug charge and was transferred to the San Bernardino West Valley Detention Center, in Rancho Cucamonga. Upon JANE arrival at the jail, SBSD proceeded to book DOE. At West Valley Detention Center, SBSD employees subjected JANE to an intrusive strip and visual body cavity searches. JANE was strip searched in a group of other Detainees. SBSD employees required JANE and the other Detainees, to remove all their clothing, and to bend and squat, exposing their anus. Pursuant to the deputies' commands, JANE and the other Detainees turned, faced the wall, bent over, spread their buttocks, put a finger inside their vaginas, squatted, spread the lips of their vaginas, and coughed. The deputies forced the Inmates to squat for a painful amount of time. Plaintiff JANE and the others were forced to stand, naked, so close to one another that they were touching. While she was subjected to this search, JANE was not provided privacy as required by state law. At the time of the search, SBSD personnel did not have probable cause or reasonable suspicion that JANE was in the possession a weapon, contraband, or any other substance that would justify or necessitate the strip and visual body-cavity search and acted with deliberate indifference to Plaintiff and class members' rights. During the search SBSD personnel subjected plaintiff JANE to abusive, degrading and harassing comments and other indignities. JANE had no criminal history and asked what the process was and why she was being strip searched. JANE's questions were met with

silence. This strip search occurred during JANE's menstrual cycle. JANE was instructed
to remove her hygiene protection. JANE bled on herself and on the floor. JANE was
then instructed to clean up the blood. During the strip search SBSD personnel subjected
plaintiff JANE and the other Inmates to abusive, degrading and harassing comments and
other indignities in a deliberate indifference to Plaintiff and class members rights.

55.     Between the summer of 2015 and summer of 2016, JANE was repeatedly
strip searched. These strip searches occurred at the discretion and whim of the SBSD
personnel and in the presence of other Detainees or Inmates. JANE was strip searched
prior to going to court appearances. JANE was strip searched upon return from her court
appearance. Plaintiff JANE again complained about her treatment and the intrusive strip
searches. Notwithstanding that complaint, SBSD failed and refused to address these
complaints. Defendants acted with deliberate indifference to Plaintiff's rights when they
took on the affirmative act of causing these strip searches and visual body cavity searches
to be conducted.

56.     In 2016, while in the custody of the SBSD, JANE was transferred to Glen
Helen Rehabilitation Center (Glen Helen), from West Valley Detention Center. Before
departing West Valley Detention Center and prior to getting on to the transfer bus, JANE
was strip searched with other women without privacy and in the presence and view of
other Inmates and visible to deputies in the hallway without privacy and in the presence
and view of the Inmates and visible to Sheriff personnel not involved in or necessary to
the search. Upon arrival at Glen Helen, and in the processing into the Glen Helen jail,
JANE was strip searched again. Though JANE never left the custody of the Sheriff
deputies, she had to go through the "strip-search" procedure before being placed into the
transfer bus and then again go through the "strip-searched" procedure upon getting off
the transfer bus at Glen Helen. JANE was strip searched twice in a matter of hours!

57.     JANE was again, strip searched with other women in a hallway without
privacy and in the presence and view of other Inmates and visible to Sheriff's personnel
not involved in or necessary to the search. JANE was strip searched even though the

1  deputies did not have reasonable suspicion that she was in possession of contraband or

2  weapons as she was in the custody of Sheriff personal at all times. Defendants acted with

3  deliberate indifference to Plaintiff's rights when they took on the affirmative act of

4  causing these strip searches and visual body cavity searches to be conducted.

5      58.    In 2017, JANE, and in SBSD custody, was transported from the West Valley

6  Detention Center to the San Bernardino Superior Court.  Before departure from West

7  Valley, SBSD personnel conducted a strip and visual body cavity search on JANE along

8  with other women, in a hallway without privacy and in the presence and view of other

9  Inmates and visible to Sheriff's personnel not involved in or necessary to the search.

10  JANE and the others were searched even though the deputies did not have reasonable

11  suspicion that the women were in possession of contraband or weapons.

12      59.    JANE was subjected to strip searches each time JANE went to a court

13  appearance and again upon return from a court appearance.  Again, JANE never left the

14  custody of the Sheriff's personal yet was subjected to two strip searches within hours.

15      60.    In 2016, JANE appeared in the San Bernardino Superior Court, for

16  sentencing.  Prior to JANE's court appearance JANE was strip searched.  Upon

17  sentencing, Sheriff's deputies took custody of JANE, returned her to the West Valley

18  Detention Center where, upon arrival, she was subjected to a strip and visual body cavity

19  search with other women in a hallway without privacy and in the presence and view of

20  other Inmates and visible to Sheriff's personnel not involved in or necessary to the search.

21      61.    During the searches SBSD personnel subjected plaintiff JANE and the other

22  Inmates to abusive, degrading and harassing comments and other indignities, in a

23  deliberate indifference to Plaintiff's and other class members rights.

24      62.    The strip and/or visual body cavity searches of plaintiff JANE took place in

25  a hallway.  She was always searched in a group of female Inmates. While facing the

26  deputies, plaintiff and the other Inmates had to remove all their clothing, including their

27  bras and panties, and shake them out. Pursuant to the deputies' commands, JANE and the

28  others turned, faced the wall, bent over, spread their buttocks, put a finger inside their

vaginas, squatted, spread the lips of their vaginas, and coughed. The deputies forced the Inmates to squat for a painful amount of time. Plaintiff JANE and the others were forced to stand, naked, so close to one another that they were touching.

63.    During one of the searches, as the Inmates were squatting and coughing, the deputies stated that some of the women did not cough correctly. The deputies ordered all the women to remain in the crouched position, holding their buttocks and vaginal lips apart for over a minute, and continuing to cough. JANE suffered considerable pain trying to keep her balance. If female Inmates were menstruating, they had to remove their tampons and pads. Some women began to menstruate on the floor. Also present were other Inmates who handed out pads and cleaned up the blood on the floor.

64.    JANE next was transferred to Chowchilla prison.  Upon arrival at the Chowchilla facility, JANE was again strip searched with approximately 15 other Inmates. During the search, the Inmates were instructed to squat and cough.  The deputies ordered all the women to remain in the crouched position, holding their buttocks and vaginal lips apart for over a minute, and continuing to cough. JANE suffered considerable pain trying to keep her balance. The deputies forced the Inmates to squat for a painful amount of time. Plaintiff JANE and the others were forced to stand, naked, so close to one another that they were touching.

65.    The searches of the female Inmates were also visible to female Inmates in the holding cells.

66.    Often during the strip searches, the deputies treated the whole affair as a joke, laughing and calling JANE and others repulsive epithets and acting with deliberate indifference to Plaintiff and class members' rights.

67.    JANE was repeatedly strip searched throughout her incarceration, often twice in one day, until her release in the Fall of 2017.

## IV.    CLASS ACTION ALLEGATIONS

68.    Plaintiffs bring this action on their own behalf, and on behalf of the class of all other persons similarly situated, pursuant to Rule 23, Federal Rules of Civil Procedure.

69.    Plaintiffs propose five classes.

70.    **Class One** is defined as persons who were strip searched and whose criminal cases were pending within the Statute of Limitation, as extended by the tolling provisions set forth in California Code of Civil Procedure § 352.1 and California Government Code § 945.3, and up to the time that the practice ceases, or the time of judgment or settlement of the case: (1) were in SBSD custody; (2) were booked on a charge  not involving violence or possession of drugs or weapons; (3) were strip and/or visual body cavity searched before their arraignment absent reasonable suspicion or probable cause that the individual is in possession of weapons or drugs, before being placed in a San Bernardino County Jail facility. All of the named plaintiffs belong to and represent Class One. Class One is made up of three subclasses of pre-arraignment arrestees:

A.    The first subclass is defined as persons who were taken directly to West Valley Detention Center or Central Detention Center upon arrest. Plaintiffs JOHNSON, CROWELL and JANE belong to and represent this subclass.

B.    The second subclass is defined as persons who were taken to West Valley Detention Center or Central Detention Center from another San Bernardino County Jail facility before arraignment. Plaintiffs JOHNSON, CROWELL and DOE belong to and represent this subclass.

C.    The third subclass is defined as persons who were taken to West Valley Detention Center or Central Detention Center from a non-San Bernardino County Jail facility, such as a federal prison or a different county jail.  JANE belongs to and represents this subclass.

71.    **Class Two** is defined as persons who were strip-searched within the Statute of Limitation, as extended by the tolling provisions set forth in California Code of Civil Procedure § 352.1 and California Government Code § 945.3, and up to the time that the practice ceases, or the time of judgment or settlement of the case: (1) were in SBSD custody; (2) were taken from jail to court; and (3) were strip and/or visual body cavity searched before and or after their court visit. Plaintiffs JANE belongs to and represent Class Two.

72.    **Class Three** is defined as persons who were strip-searched within the Statute of Limitation, as extended by the tolling provisions set forth in California Code of Civil Procedure § 352.1 and California Government Code § 945.3 and up to the time that the practice ceases, or the time of judgment or settlement of the case: (1) were in SBSD custody; (2) were subjected to a strip and/or visual body cavity search in a manner that would be illegal for persons covered by Cal. Penal Code § 4030(b) in that the searches are conducted without affording the persons searched privacy from others, including but not limited to, privacy from members of the opposite sex.  Plaintiffs JOHNSON and CROWELL belong to and represent Class Three.

73.    **Class Four** is defined as persons who were strip-searched within the Statute of Limitation, as extended by the tolling provisions set forth in California Code of Civil Procedure § 352.1 and California Government Code § 945.3 and up to the time that the practice ceases, or the time of judgment or settlement of the case: (1) were in SBSD custody; (2) were subjected to a strip and/or visual body cavity search in an unreasonable and unconstitutional manner, including but not limited to any of the following: the conduct of such searches in the presence of other Detainees or Inmates, the conduct of such searches in an overly intrusive or aggressive or abusive manner, the conduct of such searches in the presence of persons not necessary to the search, or the conduct of such searches in an unhygienic manner.  All of the named Plaintiffs belong to and represent Class Four.

74.    **Class Five** is defined as persons who were strip-searched within the Statute of Limitation, as extended by the tolling provisions set forth in California Code of Civil Procedure § 352.1 and California Government Code § 945.3 and up to the time that the practice ceases, or the time of judgment or settlement of the case:  (1) were in SBSD custody; (2) were transported to or from another San Bernardino County jail; and (3) were subjected to strip and/or visual body cavity searches before transport. Plaintiff JANE belongs to and represents Class Five.

75.    In accordance with F.R.Civ. P. Rule 23(a), the members of the aforementioned classes are so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact number of class members. Plaintiffs are informed and believe, and thereon allege, that there are more than 50 Inmates per day who are subjected to strip and/or visual body cavity searches as a result of defendants' policy and practice of indiscriminately subjecting prisoners to strip and/or visual body cavity searches. Plaintiffs are informed and believe, and thereon allege, that there are thousands of persons in the proposed class.

76.    In accordance with F.R.Civ. P. Rule 23(a), Plaintiffs are informed and believe and thereon allege that the number of persons in each of the proposed damages classes is at least in the tens of thousands, and that the number of persons in the proposed injunctive relief classes is higher.

77.    On information and belief, over 85,000 Inmates were processed though the SBSD jail systems, Thus the Inmate population turns over many times each year.

78.    In accordance with F.R. Civ. P. Rule 23(a), there are questions of fact common to all classes. Plaintiffs are informed and believe, and thereon allege, that the common questions of fact include: (1) Whether the SBSD routinely subjects all prisoners to strip and/or visual body cavity searches, without any reasonable suspicion based on specific or articulable facts to believe any particular Inmate has concealed drug(s), weapon(s) and/or any contraband in their body cavities; and (2) Whether the strip and/or visual body cavity searches are conducted in an area of privacy so that the search cannot

1  be observed by persons not participating in the search, or whether the strip and/or visual

2  body cavity searches are conducted in open areas where they may be observed by persons

3  not participating in the searches.

4      79.    In accordance with F.R. Civ. P. Rule 23(a), there are questions of law

5  common to the Five (5) classes. Plaintiffs are informed and believe and thereon allege

6  that the common questions of law include but are not limited to: (1) Whether the SBSD

7  may indiscriminately conduct strip and/or visual body cavity searches of Inmates without

8  any reasonable suspicion based on specific or articulable facts to believe any particular

9  Inmate has concealed drug(s), weapon(s) and/or any contraband in their body cavities; (2)

10 Whether the SBSD may conduct strip and/or visual body cavity searches of Inmates in

11 open areas where  they may be observed by persons not participating in the searches; (3)

12 Whether SBSD's policy of subjecting persons to strip and/or visual body cavity searches

13 violates California Penal Code §4030; (4) Whether SBSD's policy of subjecting persons

14 to strip and/or visual body cavity searches in an area which is not an "area of privacy"

15 violates California Penal Code §4030 (m); (5) Whether the conduct described above

16 violates the Fourth Amendment; (6) Whether the conduct described above constitutes a

17 policy or custom of the defendants; (7) Whether defendant MCMAHON, or any DOE

18 defendants, are entitled to qualified immunity on the federal claims, or state law

19 immunity on the state law claims, for the practices complained of herein; and (8)

20 Whether determination of damages suffered by a statistically representative sample of the

21 class provides the basis for determination of all class members' damages except those

22 who opt out.

23      80.    In accordance with F.R. Civ. P. Rule 23(a), the claims of the representative

24 Plaintiffs are typical of the class:

25      A.    **For Class One**, each of the named plaintiffs were booked on a charge

26 not involving violence or possession of drugs or weapons.  Plaintiffs were in SBSD

27 custody when they were subjected to strip and visual body cavity searches without any

28 reasonable suspicion based on specific or articulable facts to believe that plaintiffs had

concealed drug(s), weapon(s) and/or any contraband in their body cavities, before being placed in a San Bernardino County jail.

        B.    **For Class Two**, Plaintiff JANE was taken from jail to court and back to jail, and was stripped and visual body cavity searched before going to court and again strip searched upon going back to jail.

        C.    **For Class Three**, each of the named Plaintiffs were subjected to strip and visual body cavity searches without privacy and under conditions that would violate Cal. Penal Code § 4030 were it applicable to persons like plaintiffs.

        D.    **For Class Four**, each of the named Plaintiffs were subject to a strip and/or visual body cavity search in an unreasonable, and accordingly unconstitutional, manner including, but not limited to, any of the following: the conduct of such searches in the persons of the other Inmates and/or Detainees; the conduct of such searches in an overly intrusive, or aggressive, or abusive manner; the conduct of such searches in the presence of persons not necessary to the search; or, the conduct of such searches in an unhygienic manner.

        E.    **For Class Five**, Plaintiff JANE was transported from jail to another jail, and strip and/or visual body cavity searched prior to transport from one jail and again strip and/or visual body cavity searched upon arrival to the subsequent jail.

    81.    Each of the named Plaintiffs' claims is based upon the same legal theories as the claims of the class members they represent. Each class member suffered actual damages as a result of being subjected to a strip and/or visual body cavity search. The actual damages suffered by the representative plaintiffs are similar in type and amount to the actual damages suffered by each class member.

    82.    In accordance with F.R. Civ. P. Rule 23(a), the representative parties will fairly and adequately protect the interests of the class. The interests of the representative plaintiffs are consistent with and not antagonistic to the interests of the class. The Plaintiffs have retained skilled counsel with experience in constitutional and class action litigation to represent the Class.

83.    In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudication with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

84.    In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

85.    In accordance with Fed.R.Civ.P. Rule 23(b)(2), Plaintiffs are informed and believe and thereon allege that the Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

86.    In accordance with Fed.R.Civ.P. Rule 23(b)(3), this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. Common issues predominate as Plaintiffs constitutional rights were violated because of defendants' policy and practice of indiscriminately subjecting Detainees/Inmates who were not incarcerated for weapons, drugs or violent charges, to strip and/or visual body cavity searches. Plaintiffs are informed and believe, and thereon allege, that the interest of the members of the class in individually controlling the prosecution of a separate action is low, in that most class members would be unable to individually prosecute any action at all. Plaintiffs are informed and believe, and thereon allege, that the amounts at stake for individuals are so small that separate suits would be impracticable. Plaintiffs are informed and believe, and thereon allege, that most members of the class will not be able to find counsel to represent them. Plaintiffs are informed and believe, and thereon allege, that it is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, i.e., the County of San

Bernardino.  It will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple courts.

87.     Plaintiffs do not know the identities of the class members.  Plaintiffs are informed and believe, and thereon allege, that the identities of the class members may be ascertained from SBSD records.  Class plaintiffs are informed and believe, and thereon allege, that SBSD records reflect the identities, including addresses and telephone numbers, of the persons who have been held in custody by SBSD. Plaintiffs are informed and believe, and thereon allege, that SBSD records reflect when prisoners were taken to court, when prisoners are returned from court, why prisoners were released, and when prisoners were released. Plaintiffs are informed and believe that all of the foregoing information is contained in SBSD's computer system, the "Jail Information Management System," commonly referred as "JIMS", and that the information necessary to identify the class members, their last known addresses, and the dates and reasons for their releases from custody, is readily available from SBSD's computer system.

88.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised in this action. The class action will be manageable because so many different-records systems exist from which to ascertain the members of the putative class.  Liability can be determined on a class-wide basis.  Damages can be determined on a class-wide basis using a damages matrix set by a jury, or by trying the damages of a statistically valid sample of the class to a jury and extrapolating those damages to the class as a whole.

89.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that SBSD computer records contain a last known address for class members. Plaintiffs contemplate that individual notice be given to class members at such

1   last known address by first class mail. Plaintiffs contemplate that the notice will inform
2   class members of the following:

3       A.      The pendency of the class action, and the issues common to the class;

4       B.      The nature of the action;

5       C.      Their right to 'opt out' of the action within a given time, in which
6   event they will not be bound by a decision rendered in the class action;

7       D.      Their right, if they do not 'opt out,' to be represented by their own
8   counsel and enter an appearance in the case; otherwise, they will be represented by the
9   named Plaintiffs and their counsel; and

10      E.      Their right, if they do not 'opt out,' to share in any recovery in favor
11  of the class, and conversely to be bound by any judgment on the common issues, adverse
12  to the class.

### Count One - 42 U.S.C. § 1983

### (By All Plaintiffs Against All Defendants)

15      90.     Plaintiffs incorporate by reference each and every allegation contained in the
16  preceding paragraphs as if set forth fully herein.

17      91.     In subjecting Plaintiffs and the class to unnecessary, deliberate, demeaning,
18  and outrageous intrusive strip and/or visual body cavity searches, in a deliberate
19  indifference to plaintiffs' rights, defendants, and each of them, violated the rights of
20  plaintiffs and class members to be secure in their person against unreasonable searches
21  and seizures, to due process and the equal protection of the laws, as guaranteed by the
22  Fourth and Fourteenth Amendments to the United States Constitution.  Therefore,
23  plaintiffs and the class members are entitled to bring suit and recover damages pursuant
24  to 42 U.S.C. § 1983.

25      92.     In subjecting plaintiffs and the class to unnecessary, demeaning, and
26  outrageous intrusive strip and/or visual body cavity searches, defendants, and each of
27  them, deprived plaintiffs and the class members of their constitutional rights to be free
28  from cruel and unusual punishment, in violation of the Eighth Amendment to the United

1     States Constitution and state law, thereby entitling them to bring suit and recover

2     damages pursuant to 42 U.S.C. § 1983.

3         93.     There is no proper or sufficient need or justification for the strip search

4     procedure.

5         94.     By instituting and continuing the strip search procedures identified above,

6     Defendants have subjected Plaintiffs and the members of the Class to an unreasonable

7     search in violation of the Fourth Amendment.

8         95.     By instituting and continuing the strip search procedures identified above,

9     Defendants have subjected Plaintiffs and the members of the Class to punishment in

10     violation of the Fourteenth Amendment.

11         96.     Policies, customs and/or widespread practices of Defendant SAN

12     BERNARDINO COUNTY, and/or the express decisions of its policymaker(s) are the

13     moving force behind these violations. Defendants MCMAHON, WYNN, BILLINGS,

14     BESSINGER and/or GUILLEN, had supervisory responsibility to have terminated the

15     procedure and failed to do so.

16         97.     WHEREFORE, named Plaintiffs respectfully demand judgment on behalf of

17     themselves and the class, awarding costs, fees, attorney's fees, actual damages, and any

18     other appropriate relief against Defendants. Named Plaintiffs further demand an award of

19     punitive damages on behalf of themselves and the class against Defendants MCMAHON,

20     WYNN, BILLINGS, BESSINGER and/or GUILLEN.

21         98.     As a direct and proximate cause of the aforementioned acts of defendants,

22     plaintiffs and the class members were damaged in amounts to be determined at trial.

23                     **Count Two - 42 U.S.C. §1983 Violations of**

24                       **the Fourth and Fourteenth Amendments**

25                    **(By All Plaintiffs Against All Defendants)**

26         99.     Plaintiffs incorporate by reference each and every allegation contained in the

27     preceding paragraphs as if set forth fully herein.

28

100.   There is no proper or sufficient justification for the use of a group strip and or visual cavity search procedure, nor for the other aspects of the procedure including the amount of time for which the Detainees and or Inmates must remain naked.

101.   By instituting and continuing the group strip and or visual cavity search procedures identified above, Defendants have subjected Plaintiffs and the Class Members to an unreasonable search in violation of the Fourth Amendment.

102.   By instituting and continuing the group strip and or visual cavity search procedure and allowing it to be performed in the alleged manner described above, Defendants have subjected Plaintiffs and the class members to punishment in violation of the Fourteenth Amendment.

103.   Policies, customs and/or widespread practices of Defendant SAN BERNARDINO COUNTY, and/or the express decisions of its policymaker(s) are the moving force behind these violations. Defendants MCMAHON, WYNN, BILLINGS, BESSINGER and/or GUILLEN in their official capacities instituted, condoned, and/or failed in their supervisory responsibility to have terminated the procedure.

104.   WHEREFORE, Named Plaintiffs respectfully demand judgment on behalf of themselves and the class, awarding costs, fees, attorney's fees, actual damages, and any other appropriate relief against Defendants SAN BERNARDINO COUNTY and MCMAHON, WYNN, BILLINGS, BESSINGER and/or GUILLEN in their official capacities. Named Plaintiffs MCMAHON, WYNN, BILLINGS, BESSINGER and/or GUILLEN further demand an award of punitive damages on behalf of themselves and the class against Defendants MCMAHON, WYNN, BILLINGS, BESSINGER and/or GUILLEN.

### Count Three - Monell Claim Under 42 U.S.C. § 1983
### (By All Plaintiffs Against COUNTY OF SAN BERNARDINO  and
### SAN BERNARDINO COUNTY SHERIFFS DEPARTMENT)

105.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

106.   There is no proper or sufficient justification for the use of a group strip and or visual cavity search procedure, nor for the other aspects of the procedure including the amount of time for which the Detainees must remain naked.

107.   At all times relevant herein, Defendants were supervisors and/or policy makers for Defendant COUNTY OF SAN BERNARDINO and the SAN BERNARDINO SHERIFFS DEPARATMENT which, upon information and belief, employed unlawful and illegal customs and practices of civil rights violations and unlawful conduct as described herein, while carrying out their mandate. Said misconduct was encouraged, tolerated, and condoned by MCMAHON, WYNN, BILLINGS, BESSINGER and/or GUILLEN and Defendant DOES 1-5.

108.   On all relevant dates herein, Defendants and Defendants Does 1-5, acting within the course and scope of their duties as SBSD peace officers or civilian employees of the SBSD and/or COUNTY OF SAN BERNARDINO, deprived Plaintiffs of their constitutional rights, in violation of Plaintiffs' due process rights by conducting unlawful strip and or visual body cavity searches of Detainees.

109.   At the time of these constitutional violations by Defendants, Defendant COUNTY OF SAN BERNARDINO and the SBSD had in place, and had ratified, policies, procedures, customs, and practices which permitted and encouraged their officers to unjustifiably, unreasonably, and in violation of the Fourth and Fourteenth Amendments, unlawfully strip search persons and or visual body cavity search, without probable cause.

110.   Said policies, procedures, customs, and practices also called for Defendant COUNTY OF SAN BERNARDINO and the SBSD to not discipline, prosecute, or objectively and/or independently investigate or, in any other way, deal with or respond to known incidents and complaints of wrongful conduct, to cover-up and conceal such wrongful conduct by SBSD peace officers or civilian employees, and to fail to objectively and/or independently investigate or in any other way, deal with or respond to

the related claims and lawsuits made as a result of such strip searches and related
misconduct.

111.    Defendants COUNTY OF SAN BERNARDINO and the SBSD was aware
of and was deliberately indifferent to a pervasive and widespread pattern and practice
within the SBSD of concealing known instances of illegal strip searches, wrongful acts,
on-duty criminal acts, and on-duty acts of moral turpitude. Despite said knowledge,
Defendants COUNTY OF SAN BERNARDINO and the SBSD failed to take any
reasonable measures to correct this pattern and practice and, as a result, Defendants
COUNTY OF SAN BERNARDINO and the SBSD has been deliberately indifferent to
the civil rights violations which resulted, including those which are described in the
present complaint.

112.    The policies, procedures, customs, and practices of COUNTY OF SAN
BERNARDINO and the SBSD called for and led to its refusal to investigate complaints
of unlawful strip searches, in violation of Inmates' and Detainees' civil rights and an
effort to conceal such misconduct, all while officially claiming that such incidents were
justified and proper.

113.    The policies, procedures, customs, and practices of Defendants COUNTY
OF SAN BERNARDINO and the SBSD encouraged an atmosphere of lawlessness within
the Department and encouraged their peace officers and civilian employees to believe
that unlawful strip searches and or visual body cavity searches of Inmates  and Detainees
such as Plaintiffs and class members, and to believe that said unlawful acts would be
overlooked without discipline or other official ramifications.

114.    The policies, procedures, customs, and practices of Defendants COUNTY
OF SAN BERNARDINO and the SBSD created a deliberate indifference to the
violations of the constitutional rights of Plaintiffs in this case. This indifference was
manifested by the failure to change, correct, revoke, or rescind said policies, procedures,
customs and practices in light of prior knowledge by Defendants COUNTY OF SAN

BERNARDINO and the SBSD and its subordinate policymakers of indistinguishably similar incidents of unjustified and unreasonable and unlawful acts as described herein.

115. Deliberate indifference to the civil rights of victims by the COUNTY OF SAN BERNARDINO and the SBSD's is also evidenced by Defendants' ignoring the history and pattern of prior lawsuits alleging civil rights violations, similar to those alleged herein, arising from such misconduct and the related payment of judgments to such individuals.

116. Defendants COUNTY OF SAN BERNARDINO and the SBSD said deliberate indifference is also evidenced by an absence of, or by maintenance of an inadequate system, of tort-claims tracking, complaints tracking, and by maintaining an inadequate system of officer discipline and independent and objective investigation by the Defendants COUNTY OF SAN BERNARDINO and the SBSD which failed to identify and investigate instances of wrongful conduct and illegal strip searches and or visual body cavity searches.

117. The foregoing acts, omissions, and systemic deficiencies are policies and customs of COUNTY OF SAN BERNARDINO and the SBSD caused, permitted and/or allowed under official sanction, Defendants and DOE Defendants 1-10 to be unaware of, or to intentionally overlook and ignore, the rules and laws governing the use of force, the probable-cause requirements for arrests, the falsification of evidence or the tampering with evidence, and the submission of false investigative reports.

118. The foregoing acts, omissions, and systemic deficiencies are policies and customs of COUNTY OF SAN BERNARDINO and the SBSD, permitted and/or allowed under official sanction of said Defendants and DOE Defendants 1-10 to believe that strip searches are entirely within the discretion of the officer or civilian employee and that improper and unlawful strip searches or violation of Inmates' civil rights, would not be objectively, thoroughly, and/or properly investigated, all with the foreseeable result that Defendants and DOE Defendants 1-10 would make unlawful strip searches and thereby violate the civil rights of the citizens of this state, including Plaintiffs and class members.

119.   As a result of the aforementioned acts, omissions, systematic deficiencies, policies, procedures, customs, and practices, Defendants and DOE Defendants 1-10, unlawfully strip searched and /or visually body cavity searched, Plaintiffs and class members. As a direct and proximate result of the aforementioned acts of Defendants COUNTY OF SAN BERNARDINO and the SBSD, and its practices, policies, customs, and procedures, Plaintiff suffered the injuries alleged in this Complaint.

**Count Four - Cal. Civ. Code § 52.1(b)**

**(By All Plaintiffs Against All Defendants)**

120.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

121.   The unnecessary, demeaning, and outrageous intrusive strip and/or visual body cavity searches deprived plaintiffs and the class they represent, via coercion, of the protections afforded by provisions of federal constitutional and state constitutional and statutory law, including but not limited to rights protected under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution; Article I, §§1, 7, 13, and 17, of the California Constitution, and California Penal Code § 4030. Therefore, plaintiffs and the class members they represent are entitled to bring suit and recover damages pursuant to Cal. Civ. Code §52.1(b).

122.   As a direct and proximate cause of the aforementioned acts, plaintiffs and class members were damaged in an amount to be proven at trial but in any event not less than $4000 per violation pursuant to the provisions of Civil Code §52.1(b).

**Count Five - Violation of Penal Code § 4030**

**(By all Plaintiffs Against All Defendants)**

123.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein

124.   The unnecessary, demeaning, deliberate, outrageous, and intrusive strip and/ or visual body cavity searches, to which the Plaintiffs and class they represent were subjected to by the defendants, and the manner in which they were conducted, violated

1    the right of plaintiffs, and the class they represent, not to be subjected to invasion of their

2    fundamental privacy interests, as guaranteed by California Penal Code § 4030.

3         125.   Although by its terms Penal Code § 4030 only applies to misdemeanor

4    arrests, there is no rational basis to establish different standards for how a strip search is

5    conducted in order to maintain the arrestee's privacy while allowing the strip search based

6    on whether arrestee is charged with a misdemeanor or a non-violent, non-drug or non-

7    weapons felony. Accordingly, equal protection and due process of law under the Federal

8    and California Constitutions require that the manner of strip search protections contained

9    in Penal Code § 4030 apply to non-violent, non-drug or non-weapons felony arrestees as

10   well as misdemeanor arrestees.

11        126.   The aforementioned acts of defendants directly and proximately caused the

12   plaintiffs and the classes they represent to be deprived of their rights as stated above,

13   thereby entitling plaintiffs and the class to recover damages proximately caused by

14   defendants' wrongful acts, including statutory damages under Penal Code §4030.

## Count Six - Violation of Mandatory Duties
## (By All Plaintiffs Against All Defendants)

17        127.   Plaintiffs incorporate by reference each and every allegation contained in the

18   preceding paragraphs as if set forth fully herein

19        128.   The Fourth and Fourteenth Amendments to the United States Constitution;

20   Article I, §§1, 7, 13, and 17, of the California Constitution; California Penal Code §4030;

21   and California Civil Code §52.1 are enactments. Enactments form the basis of a

22   mandatory duty under California Government Code § 815.6.

23        129.   These constitutional provisions and statutes apply to all members of the

24   general public, including plaintiffs, and were all designed to prevent the kind of injuries

25   alleged herein.

26        130.   Defendants did not exercise reasonable diligence in discharging their duty to

27   refrain from violating the constitutional rights of plaintiffs and class members.

28

131.    As a direct and proximate cause of the aforementioned acts of defendants, plaintiffs and the class members were damaged in amounts to be determined at trial.

### Prayer

WHEREFORE, each plaintiff requests damages against each Defendant as follows

132.    General and special damages according to proof;

133.    As against the individual Defendants only, punitive damages according to proof;

134.    In addition to actual damages, statutory damages as allowed by law, including Penal Code §4030 and treble damages under California Civil Code §§52 and 52.1,

135.    Attorneys' fees and costs under 42 U.S.C. §1988; California Civil Code §§52(b)(3), 52.1(h); California Code of Civil Procedure §1021.5, and whatever other statute or law may be applicable;

136.    Such other relief as is just and proper.

Dated: May 25, 2018                                 SKAPIK LAW GROUP


By: _Geralyn Y. Skapik_
     Mark J. Skapik
     Geralyn L. Skapik
     Blair J. Berkley
     Attorneys for Plaintiffs

Dated: May 25, 2018                                 SOUTHERN CALIFORNIA
                                                    LAWYERS GROUP


By: _____
     Eric C. Morris
     Attorneys for Plaintiffs

## **Demand for Jury Trial**

Plaintiffs, on behalf of themselves individually and on behalf of the class, demand a jury trial.

Dated: May 25, 2018                                    SKAPIK LAW GROUP


By: _____
      Mark J. Skapik
      Geralyn L. Skapik
      Blair J. Berkley
      Attorneys for Plaintiffs


Dated: May 25, 2018                                    SOUTHERN CALIFORNIA
                                                              LAWYERS GROUP


By: _____
      Eric C. Morris
      Attorneys for Plaintiffs